UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DOUGLAS PANOZZO,** **Individually and on behalf of others similarly situated,** vs. **JUST ENERGY GROUP INC., and** **JUST ENERGY MARKETING** **CORP., and** **COMMERCE ENERGY, INC.** **(dba Tara Energy)** **Foreign corporations** **Defendants.** | **Case No.** |

**CLASS ACTION COMPLAINT**

Plaintiff, by his undersigned attorney, for his Complaint, alleges as follows:

**NATURE OF ACTION**

1. Plaintiff brings this class action for unpaid wages earned, monetary damages, liquidated damages, declaratory and injunctive relief and other equitable and ancillary relief pursuant to the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.* This action is brought as a state-wide class action under Fed. R. Civ. P. 23(b)(3).

2. Plaintiff Douglas Panozzo was employed by Defendants to go door to door in Illinois with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services.

3. Defendants implemented a common scheme whereby Plaintiff was not paid

for all hours worked, did not receive the applicable minimum wage, and was not paid overtime for hours worked in excess of forty hours in a given workweek, in violation of the <u>Illinois Minimum Wage Law</u>, 820 ILCS §105 *et. seq.*

4. Defendants accomplished this by wrongly classifying Plaintiff and other door-to-door workers as independent contractors and/or exempt outside salespersons when in fact they were non-exempt employees. In so doing, Defendants knowingly and willfully did not pay Plaintiff and other similarly situated persons the applicable minimum wages and did not pay them overtime wages even though they were routinely required to work more than 40 hours per week.

5. Defendants began paying its door-to-door workers minimum wage and overtime on approximately January 23, 2017. This occurred after a jury verdict against them for this same conduct in *Hurt v. Commerce Energy, Inc. et al,* N.D. Ohio Case No. 1:12-CV-00758 (a multi-state class action under Ohio and federal law), and after Judge Gottschall denied them summary judgment in *Wilkins v. Just Energy Group, Inc. et al* (a class action involving Defendants' affiliate and its Westmont, Illinois office). This lawsuit seeks relief for the time period before Just Energy began paying their workers minimum wage and overtime and for workers in different offices in Illinois than in *Wilkins*.

### THE PARTIES

**Plaintiffs and the putative class**

6. Plaintiff Panozzo is an Illinois resident and worked for Defendants from approximately July 6, 2012 until around April 2015.

7. Plaintiff seeks to represent the following class:

All persons in the relevant time period who: (a) were Illinois residents; (b) were hired by JEMC to work door-to-door in Illinois and (c) were not paid minimum wage and/or overtime. The class excludes workers who are already part of the certified class in *Wilkins v. Just Energy Group, Inc., et al* Case No. 1:13-CV-05806 *and* worked exclusively out of Defendants' Westmont office.

(Hereinafter these persons shall be referred to as "putative class members").

**Defendants**

8. Defendants market, or employ affiliates to market gas and electricity to residential and commercial customers in Illinois, certain other states, and certain Canadian provinces through its wholly owned subsidiaries. Defendants' business and/or that of their affiliates primarily involve the marketing and sale of natural gas and/or electricity supply to residential and commercial customers under long term fixed price, price-protected or variable-priced contracts and green energy products.

9. Each named Defendant exerts significant control over the putative class members and determine or co-determine matters governing essential terms and conditions of the putative class members' employment.

10. The Defendants, or one of them, provide vehicles used to transport workers in Plaintiff's and the putative class members' position.

11. The Defendants, or one of them, provide Illinois regional distributors (who oversee offices in which Plaintiff and the putative class members work) proprietary information which relates to the work Illinois workers in Plaintiff's and the putative class members' position perform.

12. The Defendants, or one of them, maintain employment and other records for

Plaintiff and the putative class members.

### *Defendant Just Energy Group ("JEG")*

13. Upon information and belief, at all times hereinafter mentioned, JEG was and still is a foreign corporation headquartered in Ontario, Canada doing business in Illinois.

14. JEG is the parent company of the other named Defendants.

15. JEG recruits the door-to-door workers. Recruiting for door-to-door workers is conducted through a central location. That central location is run by JEG, and staffed by JEG personnel. If someone responds to a recruiting ad, they call a toll-free number staffed by JEG personnel.

16. JEG has a uniform code of conduct that applies to every putative class member. The putative class members were required to comply with the JEG policies described in the "Code of Business Conduct and Ethics Policy."

17. JEG could terminate putative class members who violated its code of conduct. The stated penalty for non-compliance with the JEG Code and JEG rules is discipline up to termination by JEG: "To protect the Company's good name, the Company may discipline and/or terminate its relationship or affiliation with any Representative who breaches this Code or related policies."

18. JEG also prepared a Compliance Matrix for the putative class members. The purpose of the Compliance Matrix was "to ensure that Just Energy's guidelines are communicated." After the document was signed by the putative class member, it was returned to Just Energy's head office. (the "head office" for Defendant Commerce Energy is JEG). JEG has fired door-to door workers for breaches of JEG's Compliance Matrix.

19. JEG has a compliance department (sometimes referred to as "CCR" department),

which department can, and has fired door-to-door workers marketing on behalf of Defendant Commerce Energy.

20. While it is the parent company, JEG is not a distant overlord of the door-to-door workers, but rather employs administrators in each of its offices, which upon information and belief includes the offices in Illinois which are the subject of this complaint.

*Defendant Just Energy Marketing Corp. ("JEMC")*

21. Upon information and belief, at all times hereinafter mentioned, JEMC is a subsidiary of JEG doing business in Illinois.

22. JEMC engages door-to-door workers in all offices in Illinois. JEMC contracts with the door-to-door workers like the Plaintiff and putative class members, and then provides those workers to an affiliate of JEG, i.e. Defendant Commerce Energy. The named Plaintiff's contract with JEMC is attached hereto as Exhibit A.

23. JEMC requires a criminal background check from Plaintiff and putative class members in order to work for them. See Exhibit A.

24. JEMC dictates the terms and conditions of Plaintiff's and the putative class members' marketing activity, and otherwise how they conduct themselves. See Exhibit A.

25. JEMC requires Plaintiff and the putative class members to keep certain information confidential. See Exhibit A.

26. JEMC dictates the compensation for Plaintiff and the putative class members. See Exhibit A.

27. JEMC paid Plaintiff and the putative class members.

28. JEMC enforces a non-solicitation and non-competition policy on Plaintiff and the putative class members. See Exhibit A.

29. JEMC trained Plaintiff and the putative class members.

30. JEMC requires its workers to wear badges.

31. Plaintiff and the putative class members were bound by JEMC's compliance codes and ethical rules.

### *Defendant Commerce Energy (dba Tara Energy)*

32. JEMC engages independent contractors on behalf of Commerce Energy.

33. Plaintiff and the putative class members perform work for Commerce Energy.

34. Commerce Energy maintains the six offices in Illinois at which Plaintiff and the putative class members work.

### **JURISDICTION AND VENUE**

35. Jurisdiction in this case is based on 28 U.S.C. §1332 in that it involves a putative class action, minimum diversity exists in that the named Plaintiff is a resident of Illinois and the Defendants are citizens of a foreign state and, on information and belief, the amount in controversy exceeds $5,000,000.

36. The Court has personal jurisdiction over Defendants pursuant to Federal Rule 4(k)(1), in that the Defendants have sufficient contact with the state of Illinois as it conducted business within the state. (Plaintiff refers to and incorporates the allegations made in all of the previous paragraphs).

37. The Court has personal jurisdiction over Defendants because Defendants' management of marketing efforts and maintenance of regional offices in Illinois caused Plaintiff and the putative class members to be deprived of overtime and minimum wage, creating the basis for this lawsuit.

38. Plaintiff is unaware of any facts that in any way suggest that Defendants will

not be able to defend itself in this jurisdiction. While Defendants are foreign corporations, Defendants have significant resources, and are defending a similar lawsuit in a foreign jurisdiction, Ohio and additionally defended a similar lawsuit here in Illinois, *Wilkins v. Just Energy Group, Inc., et al* Case No. 1:13-CV-05806.

39. Illinois has a legitimate interest in protecting Illinois workers against exploitative employment practices.

40. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c).

## FACTS COMMON TO ALL CLAIMS

41. Plaintiff and the putative class members did not have a contract to perform work for the Defendants for a set period of time.

42. Plaintiff and the putative class members had the ability to work for Defendants indefinitely, subject to Plaintiff's and the putative class members' right to resign and Defendants' right to terminate them.

43. Plaintiff and the putative class members, during the relevant time period, worked for Defendants going door-to-door with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services.

44. The work performed by Plaintiff and the putative class members is the primary way in which Defendants get customers to apply for their and/or their affiliates' services.

45. At or around the time of hiring, Defendants and/or one of them trained Plaintiff and the putative class members on the business of Just Energy, the procedures to follow in presenting the program to potential customers, and the requirements to comply with in performing their job duties.

46. Plaintiff and the putative class members were given a written script to use when

meeting with the customers.

47. Plaintiff and the putative class members were required to adhere to specific company rules when meeting with potential customers. Plaintiff and the putative class members were reprimanded by Defendants if there are customer complaints or other issues with the performance of their jobs.

48. During the majority of the weeks of his employment, Plaintiff worked 6 days per week for 12 or more hours per day. Putative class members were required by Defendants to work the same and/or similar schedules which was fixed by Defendants and not controlled by the workers.

49. Defendants required Plaintiff to wear company badges when visiting the houses each day they worked. Defendants expected the putative class members to do the same.

50. Defendants, of one of them, provided Plaintiff and the putative class members a standard uniform to wear which consisted of a hat, shirt, and jacket (bearing the company logo) when visiting households

51. Defendants, or one of them, decided the geographic area or territory in which Plaintiff and the putative class members will work in a given day and/or week.

52. On a typical day, Defendants, or one of them, directed Plaintiff and the putative class members to come to the Just Energy office every morning. At that time, presentations about the company and its products, including sales role-playing, were given to the workers. The Defendants, or one of them, then assigned specific geographic areas for Plaintiff and the putative class members to solicit potential customers. Defendants, or one of them, would then transport Plaintiff and/or other putative class members to their territory and back to the office at the end of the shift, or if the shift involved overnight road trips, at the end of the

trip. This transporting was often done in a Just Energy company van.

53. Plaintiff and the putative class members were still limited to working only within geographic areas the Defendants permit, either traveling with the group or getting specific permission to work in some other area.

54. The named Plaintiff and the putative class members do not have the skills, nor do they have access to the internal Just Energy information, to determine which areas are selected for marketing. For example, they do not know which areas were recently marketed by other Just Energy teams; which areas were recently marketed by competitors; and, other than being told by Defendants, which areas may lawfully be canvassed by Just Energy.

55. When Plaintiff and the putative class members go to a potential customer's door, they are to only use materials created by Defendants – a company brochure and a customer application. Defendants required Plaintiff and the putative class members to present these items to the potential customer.

56. Plaintiff and the putative class members did not actually sell any of Defendants' and/or their affiliates' services.

57. Plaintiff and the putative class members had no contact with the potential customer after the application is signed.

58. The sole fact that the potential customer signed the application does not entitle the potential customer to Defendants' service.

59. The sale is not complete until four things occur: First, Defendants and/or their affiliates (through workers other than Plaintiff and the putative class members) speak with each potential customer who signed the application and require the potential customer to go through a phone verification process. Second, the Defendants require the

Plaintiff and the putative class members to submit the signed application to the regional Just Energy office for review to ensure that all the required information is complete. Third, the completed application is sent to Just Energy's Head Office (Defendant Just Energy Group) for processing. And fourth, the utility company (whom Defendants and/or their affiliates contract with to provide the service to the potential customer) must approve the potential customer for Defendants' discount program. There are a myriad of reasons outside the control of the Plaintiff and the putative class members as to why a sale might not occur. Finally, even if all four items are satisfied, Defendants and/or their affiliates retain the sole discretion to reject any signed application.

60. If any of the above requirements do not occur, or Defendants and/or their affiliates decide to reject the contract, Defendants and/or their affiliates will not provide the customer its service and similarly, a potential customer is not bound to buy Defendants' and/or their affiliates' service.

61. As a result of the pre-requisites needed for a customer to obtain Defendants' and/or their affiliates' service, Plaintiff and the putative class members can never complete the sale to the potential customer at the time they meet with the potential customer and have them sign the application.

62. Not all potential customers that fill out an application satisfy the pre-requisites to obtain Defendants' and/or their affiliates' service.

63. For each potential customer who does satisfy all requirements to obtain Defendants' and/or their affiliates' service (i.e. signs the contract, completes the verification process, and is approved by the gas and/or electric company), Plaintiff receives $50 in payment from Defendants, similar to the putative class members who likewise receive $50 or some other

similar fixed amount.

64. Plaintiff and the putative class members are then supposed to receive an additional $15 (or similar amount) for reconciliation and/or residual payments for each customer.

65. Plaintiff and the putative class members were also eligible for certain bonuses.

66. As a result of Defendants' method of compensating Plaintiff and the putative class members, Plaintiff and the putative class members have not always been paid minimum wage for all hours worked in a given week, and in some weeks have not received any pay.

67. Plaintiff and the putative class members also never received any overtime pay for the hours they worked over 40 hours per week. Plaintiff and the putative class members were always only paid $50 and/or another set amount for each of the customers who ultimately purchased Defendants' service.

68. The exact amounts that Plaintiff's pay and the putative class members' pay was below minimum wage and/or were paid less that 1 ½ their regular pay for their overtime compensation in each given week during their employment can be determined in part by Defendants' pay records, which Plaintiff will request during discovery.

69. Plaintiff and the putative class members were employees with Defendants.

70. Plaintiff and the putative class members were "non-exempt" employees under the state and federal wage and hour law, as nothing about their pay, title, duties, or anything else qualifies them for any exemption under state or federal law.

71. Non-exempt employees are entitled to a minimum wage for all hours worked and for overtime wages for all hours worked over 40 per week.

72. Plaintiff and the putative were not paid for all hours worked and were not paid

overtime wages for the hours they worked over 40 per week.

## STATE-WIDE CLASS ALLEGATIONS PURSUANT TO ILLINOIS WAGE AND HOUR AND <u>WAGE PAYMENT LAWS</u>

73. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of themselves individually and on behalf of all other members of the Class who, during the relevant statute of limitations period, have worked for Defendants and who have been aggrieved, with respect to the claims plead in this Complaint.

74. Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if:

>a) The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
>
>b) There are questions of law or fact common to the class which predominate over any questions affecting only individual members;
>
>c) The claims or defenses of the representative parties are typical of the claims or defenses to the class;
>
>d) The representative parties will fairly and adequately protect the interests of the class; and,
>
>e) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### <u>Class Definitions</u>

75. Plaintiff seeks certification of the following class:

All persons in the relevant time period who: (a) were Illinois residents; (b) were hired by JEMC to work door-to-door in Illinois and (c) were not paid minimum wage and/or overtime. The class excludes workers who are already part of the certified class in *Wilkins v. Just Energy Group, Inc., et al* Case No. 1:13-CV-05806 *and* worked exclusively out of Defendants' Westmont office.

76. The relevant time period for the vast majority of putative class members is from March 19, 2012 until January 23, 2017. The reason for

this time period is as follows:

    a.    The statute of limitations in this case is three years.

    b.    Additionally, there is 2 years, 10 months and 3 days of tolling available. In the original complaint (as well as subsequent amended complaints) filed in *Wilkins v. Just Energy Group, Inc., et al* N.D. IL Case No. 1:13-CV-05806 on August 14, 2013, Plaintiff sought to certify a class action for workers across Illinois performing door-to-door work for Just Energy, regardless of office location. This proposed definition includes those workers Plaintiff seeks to represent in the present case. The statute of limitations was therefore tolled for all those meeting this definition until June 16, 2016, when the *Wilkins* court denied certification as to those workers working out of any other office other than the Westmont office, which was associated with the entity named Just Energy Illinois. Those persons who worked out of non-*Westmont* offices are not part of the certified class in *Wilkins* and are who Plaintiff seeks to represent here.

77.    For approximately 534 persons meeting the class definition certified in *Wilkins supra*, the relevant time period is from August 24, 2010 to January 23, 2017. The reason for this time period is as follows:

    a.    The statute of limitations in this case is three years.

    b.    There is 4 years, 4 months and 29 days of tolling available. Tolling applies for these workers starting August 14, 2013 (when *Wilkins* was filed, as mentioned above) until January 12, 2018. Counsel for Defendants previously informed the undersigned that 534 workers were inappropriately deemed to be a class member by the defense in *Wilkins*. The parties agreed they needed to be noticed and informed they are not in fact a class

member. This process just finished and such persons were dismissed by the Court in *Wilkins* on January 12, 2018.

### **Numerosity**

78. This case satisfies the numerosity requirements as the proposed class consists of, upon information and belief, tens of thousands of persons. The proposed class can be identified and located using Defendants' payroll and personnel records. Therefore, the class is so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this action by direct mail and/or published and broadcast notice.

### **Common Questions of Fact or Law**

79. There are questions of fact and law common to each class that predominate over any questions affecting only individual members. The common questions of law and fact arising from Defendants' actions include, without limitation, the following:

    a) Whether the class members have been misclassified as independent contractors;

    b) Whether class members share similar job duties;

    c) Whether Defendants paid Plaintiff and the putative class members for all hours worked;

    d) Whether Defendants paid Plaintiff and the putative class members overtime;

    e) Whether Plaintiff and the putative class members regularly worked in excess of 40 hours per week; and

    f) Whether Defendants' practices violated the overtime and minimum wage provisions of the Illinois Wage and Hour Laws.

80. The questions set forth above predominate over any questions affecting only individual persons and a class action is superior with respect to consideration of consistency, economy, efficiency, fairness and equity, to other available methods for the fair

and efficient adjudication of the controversy.

### Typicality

81. Plaintiff's claims are typical of the putative class members' claims. Plaintiff suffered similar injuries as those suffered by the putative class members he seeks to represent as a result of Defendants' illegal activities as described herein.

### Adequacy

82. Plaintiff is an adequate representative of the class he seeks to represent because he is a member of the class, and his interests do not conflict with the interests of the members of the class he seeks to represent. The interests of the class members will be fairly and adequately protected by the Plaintiff and their designated counsel. Plaintiff has hired competent attorneys who are experienced in class-action litigation of this type and who are committed to prosecuting this action.

### Superiority

83. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class- action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expense and burden of individual litigation would make it difficult to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair, or impede the ability of class members to protect their interests.

## COUNT I
## VIOLATION OF THE ILLINOIS WAGE HOUR LAWS
## FAILURE TO PAY MINIMUM WAGES

84. Plaintiff repeats and re-alleged the allegations set forth in each of the paragraphs above.

85. Plaintiff and the putative class members were entitled to minimum wages for the work they performed for Defendants.

86. Defendants failed to pay Plaintiff and the putative class members such owed minimum wages, in violation of Illinois' Minimum Wage Law, 820 ILCS §105/1 et seq.

87. Illinois' Minimum Wage Law, 820 ILCS §105/3, defines an employer as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed."

88. Defendants each meet this definition of an employer pursuant to the Illinois statute. Further, Defendants' relations and interconnection with one another, and specifically as it relates to the previously pled conduct involving Plaintiff and the putative class members, subjects them to joint-employer liability.

89. By the above-alleged conduct, Defendants failed to pay Plaintiff and the putative class members compensation, including minimum wages, as required by the Illinois law.

90. Plaintiff and the putative class members were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

## COUNT II
## VIOLATION OF THE ILLINOIS WAGE HOUR LAWS
## FAILURE TO PAY OVERTIME WAGES

91. Plaintiff reasserts and re-alleges the allegations set forth in each of the paragraphs

above.

92. The Illinois Minimum Wage Act provides that unless exempt, an employee must be paid by an employer overtime wages equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week. Plaintiff and the putative class members were not exempt. 820 ILCS §105/1, *et seq.*

93. Defendants are subject to the overtime requirements of the Illinois' Minimum Wage Law because they are an employer and/or joint employer under 820 ILCS §105/3 for the reasons stated in previous paragraphs.

94. By the above-alleged conduct, Defendants failed to pay Plaintiff and the putative class members compensation, including overtime compensation, as required by the Illinois law.

95. Plaintiff and the putative class members were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

1. Award all actual damages suffered by Plaintiff and the putative class members;

2. Order the disgorgement of all monies improperly obtained by Defendants;

3. Enter an order declaring that the Defendants willfully violated the minimum wage and overtime provisions of the Illinois Minimum Wage Law;

4. Award Plaintiff and the putative class members damages in the amount of the minimum wages and overtime wages required by the Illinois Minimum Wage Law improperly denied them by the Defendants' actions;

5. Award Plaintiff and the putative class members liquidated damages under Illinois Minimum Wage Law;

6. Award Plaintiff and the putative class members prejudgment interest, and post-judgment interest;

7. Award Plaintiff reasonable attorneys' fees as well as the costs of this action;

8. Award such other and further relief as this Court deems necessary and proper, including but not limited to appropriate injunctive relief against any and all ongoing unlawful employment practices.

**DEMAND FOR A TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues for which a jury trial may be had.

Dated: January____, 2018

Respectfully submitted,

**Douglas Panozzo**

By: /s/ Terrence Buehler
One of Plaintiff's Attorneys
Terrence Buehler, Esq.
The Law Office of Terrence Buehler
17W220 W 22nd Street, Suite #410
Oakbrook Terrace, IL 60181
630-333-0000 ext 43
tbuehler@tbuehlerlaw.com

Patrick J. Perotti, Esq.
Frank A. Bartela, Esq.
Nicole T. Fiorelli, Esq.
Dworken & Bernstein Co. L.P.A.
60 South Park Place
Painesville, OH 44077
440-352-3391
pperotti@dworkenlaw.com
fbartela@dworkenlaw.com
nfiorelli@dworkenlaw.com

Murray Richelson, Esq.
David A. Katz Co., LPA
842 Terminal Tower
50 Public Square
Cleveland, OH 44113
216-696-5250
mrichelson@aol.com

James A. DeRoche, Esq.
Garson Johnson LLC
101 West Prospect Avenue, Suite #1610
Midland Building
Cleveland, OH 44115
216-830-1000
jderoche@garson.com